370 P.2d 765

Elizabeth JENSEN, Plaintiff and Respondent,

v.

Heber John WHITESIDES and Effie Whitesides, Husband and Wife, Defendants and Appellants.

No. 9581.

Supreme Court of Utah.

April 23, 1962.

Lawrence L. Summerhays, Salt Lake City, for appellants.

Bean & Bean, Layton, for respondent.

HENRIOD, Justice.

Appeal from a verdict for plaintiff in an unjust enrichment action. Affirmed, with costs to plaintiff.

Plaintiff is an elderly aunt of defendant, Mrs. Whitesides. About 1947, the latter and her husband visited Mrs. Jensen and her husband at their home in Washington State. An apparent lasting friendship sprang up between these people, visits with each other back and forth from Utah to Washington took place, correspondence and phone calls passed between them rather frequently, and such friendship seemed to be profound to the point where Mrs. Jensen entrusted some $13,000 to Mr. Whitesides' custody, which was later returned. During this period of friendship, it became the understanding of the parties that for $3,000, which was paid, defendants would build a small home for the Jensens in Layton, Utah. This was accomplished and plaintiff occupied it for about 22 months, her husband having died prior to the occupancy.

These appear to be the undisputed facts up to the time when the dove of peace winged its way from the friendly domain in which theretofore dwelled the litigants here.

The record reflects many disputatious matters. Those reasonably believable and that were admissible, tending more favorable to support the verdict, which customarily we canvass on appeal, appear in brief to be as follows:

■ Some sort of breach in the serenity of the relationship took place during plaintiff's occupancy, and she left, suing defendants for unjust enrichment arising out of a claimed contract to deliver a deed to her, which defendants allegedly failed to accomplish. She prayed for the differential between the $3,000 and a reasonable rental value incident to her occupancy. The jury came up with a $1,000 figure. Although defendants counterclaimed for many items of expense they had incurred, such as funeral costs incident to the death of plaintiff's husband, costs of transportation, installation of house accessories, and the like, plaintiff emphatically responded that *she* had made payment thereof. Defendants asserted that the true understanding was that for the $3,000 they agreed to build Mrs. Jensen a home for her to live in as long as she desired,—nothing more. Defendants' payment of taxes, fire insurance, improving the home whose construction cost was $9,000, and which was sold for $10,500 after Mrs. Jensen's departure, point up a certain degree of merit to their contention as to the import of the understanding. But the jury chose to believe those facts lending credence to Mrs. Jensen's version of the whole affair. We cannot say from here that there was any such degree of incredibility incident to those facts as would lead us to conclude that the jury was quite unreasonable or capricious in its deliberations.

In this connection, it is significant to note, that when asked if he had demanded reimbursement for the expense items he claimed to have incurred without repayment, Mr. Whitesides' answer, which reasonably, could be probative inferentially of the plaintiff's version of the novel understanding between these people, was that "I did not make any demand on Mrs. Jensen at all for any money because she always led my wife to believe that whatever happened to her my wife would get whatever she left."

■ As to the contention that the entire scene was laid in an oral atmosphere giving rise to unenforceability of any claim because of its vulnerability to the statute of frauds, we believe that sufficient correspondence and part performance are reflected in the record to inoculate the plaintiff against such a defense. As to the sufficiency of such evidence to establish specifically enforceable provisions, it is point-

ed out that the theory here was not ex contractu, as such. Even though a contract was mentionable as a probative fact, the instant action was designed to correct any unconscionable result arising, only as an incident of a contract, by the application of equitable principles to the particular facts of this particular case.

WADE, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.